IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN EISENHUTH, | No. 4:20-CV-02362 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| ACPI WOOD PRODUCTS, LLC d/b/a CABINETWORKS GROUP, | |
| Defendant. | |

**MEMORANDUM OPINION**

AUGUST 28, 2023

Roman jurist Quintus Cervidius Scaevola recorded in the Second Century A.D. that "civil law is written for the vigilant." A modern variation of this maxim is that "the laws serve those who are vigilant, not those who are sleeping." This bit of ancient wisdom is still relevant today and underlies my analysis here.

Plaintiff Brian Eisenhuth worked for the same company, ACPI Wood Products, LLC ("Cabinetworks") for over three decades, until he began missing more work than was permitted by the company's long-standing policy. At the same time, Eisenhuth applied for leave under the Family Medical Leave Act ("FMLA") with Cabinetworks' third-party FMLA administrator, Lincoln National. Eisenhuth suffers from Type One Diabetes. His request was ultimately denied due to deficiencies in his application materials. Eisenhuth continued to miss work, and was

warned, suspended, and ultimately terminated. Eisenhuth proceeded to file suit, bringing claims under the FMLA and the Americans with Disabilities Act ("ADA").

Here is where Eisenhuth has not only slept on his rights, but in his own efforts to advocate for himself. He brings a claim for FMLA retaliation, but he fails to cite any evidence that Cabinetworks fired him because of his efforts to receive FMLA leave. To the contrary, Lincoln National has detailed records documenting its efforts to work with Eisenhuth and guide him through the application process. Eisenhuth also brings a claim for FMLA interference. His only support for this claim—which he declines to meaningfully address in his papers—is an imprecise timeline that not only fails to corroborate his legal conclusions, but is also contradicted (again) by Lincoln National's business records.

Finally, Eisenhuth brings a failure-to-accommodate claim under the ADA. Again, Eisenhuth's allegations suffer from his own passivity. He argues that because Cabinetworks knew about his diabetes, the company was therefore "on notice" that he needed an accommodation. That is not how the ADA works. To succeed on this claim, Eisenhuth needed to demonstrate—with evidence—that he made an affirmative request for an accommodation. He failed to do so.

The Court acknowledges that a daily struggle with Type One Diabetes must be challenging, as would be a termination from a longtime job and a bureaucratic, multi-step application process for FMLA benefits. But those obstacles alone cannot form the basis for Eisenhuth's claims. The onus for attending work (or providing

2

evidence that such absences were clearly due to his illness) fell on Eisenhuth; the onus for requesting an accommodation also fell on him; as did the need to timely complete and submit his FMLA paperwork. The evidence cited—and, perhaps more notably, the evidence *not* presented or cited—indicates that Eisenhuth slept on these obligations, and he does not have evidence to support his claims. Cabinetworks' Motion for Summary Judgment is granted.

**I.    BACKGROUND**

    **A.    Undisputed Facts**

        **1.    Eisenhuth's Employment History at Cabinetworks**

Cabinetworks operates a facility in Mifflinburg, Pennsylvania, and Eisenhuth worked there from 1986 until March of 2020.[1] Eisenhuth's supervisor, John Walter, was aware that Eisenhuth suffered from Type One Diabetes and that he received insulin from an insulin pump, which had been prescribed by Eisenhuth's endocrinologist, Dr. Adler.[2] Eisenhuth sometimes missed work.[3] Cabinetworks had

---

[1] Doc. 39 ¶¶ 1, 3-5; Doc. 45 ¶¶ 1, 3-5.
[2] Doc. 39 ¶¶ 5-7; Doc. 45 ¶¶ 5-7.
[3] Doc. 1 ¶ 15; Doc. 39 ¶ 8; Doc. 45 ¶ 8. The Court notes that Eisenhuth's papers repeatedly state that he missed work due to his diabetes, that he "always advised his supervisor throughout his employment if he needed to leave or missed work due to his diabetes," and that he "presented paperwork from his doctor to the office as soon as he could." The temporal quality of these statements is telling—Eisenhuth does not state that he informed Cabinetworks that his absence would be related to his illness *before* he called off or failed to attend work. As described, he could have told Cabinetworks of his medical excuse after the absence had already taken place (and had therefore violated the company's policy). And Eisenhuth has provided no reliable evidence demonstrating that he gave advanced notice to Cabinetworks that each documented absence was due to his illness. Accordingly, he has failed to meaningfully refute Cabinetworks' assertion that he repeatedly missed work without a medically acceptable excuse.

3

an attendance policy that included a system of "attendance points" for missed work.[4] The attendance policy dispenses no points for excused sick leave, but an individual's employment can be terminated after he or she accumulates five attendance points.[5] On or about February 3, 2020, Eisenhuth was notified that he had accumulated 4.25 attendance points, and he was given a written warning.[6] As of March 20, 2020, Eisenhuth had accumulated 7.5 attendance points; on March 27, 2020, he received a letter terminating his employment.[7]

### 2.   Eisenhuth's FMLA Requests and Termination

Cabinetworks uses a third party, Lincoln National, to administrate the FMLA process for Cabinetworks employees.[8] On or about February 11, 2020, Eisenhuth contacted Lincoln National regarding FMLA availability.[9] On February 27, 2020, Arnie Wilver, Cabinetworks' Human Resources administrator, contacted Lincoln National to inquire about the status of Eisenhuth's FMLA request;[10] Lincoln National informed Wilver that it had provided Mr. Eisenhuth with the documentation to be completed.[11] Lincoln National's records indicate that on multiple occasions, it

---

[4] Doc. 39 ¶ 9, Ex. C (Cabinetworks' Attendance Policy); Doc. 45 ¶ 9.
[5] Doc. 39 ¶¶ 10, 12, Exs. B (Eisenhuth Dep. Tr. 51:3-9) and C (Cabinetworks' Attendance Policy); Doc. 45 ¶¶ 10 ("Denied," but the Court notes that Eisenhuth's denial is due to how he believes the policy was applied to him. This denial is contradicted by the clear language of the policy, which states that no points are assigned to "Family / Sick Day[s]"), 12.
[6] Doc. 39 ¶ 13; Doc. 45 ¶ 13.
[7] Doc. 39 ¶¶ 36, 38; Doc. 45 ¶¶ 36, 38.
[8] Doc. 39 ¶ 15; Doc. 45 ¶ 15.
[9] Doc. 39 ¶ 16; Doc. 45 ¶ 16.
[10] Doc. 39 ¶ 18; Doc. 45 ¶ 18.
[11] Doc. 39 ¶ 19; Doc. 45 ¶ 19.

spoke with Eisenhuth and his mother, and also e-mailed HOOTER6666@gmail.com (the e-mail address Eisenhuth has testified is his own), to request that Eisenhuth and/or his physician provide the required information for his FMLA request.[12] On March 20, 2020, Lincoln National spoke with Eisenhuth's mother (Eisenhuth lives with his parents) and explained that Eisenhuth's FMLA request had been denied due to incomplete paperwork.[13]

B.     **Procedural History**

Eisenhuth initiated this lawsuit on December 16, 2020.[14] Cabinetworks answered the Complaint on February 19, 2021.[15] The discovery period expired on March 2, 2023,[16] and Cabinetworks moved for summary judgment on April 6, 2023.[17] That Motion has been fully briefed and is ripe for disposition.[18]

II.    **LAW**

The legal standard for summary judgment is well established. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[19] Summary judgment is appropriate

---

[12] Doc. 39 ¶¶ 20-22; Doc. 45 ¶¶ 21, 24-25.
[13] Doc. 39 ¶ 34; Doc. 45 ¶ 34.
[14] Doc. 1.
[15] Doc. 5.
[16] Doc. 33.
[17] Doc. 36.
[18] *Id.*; Docs. 37, 39, 44-46.
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[22] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[23]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[24] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[25] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

---

[20] Fed. R. Civ. P. 56(a).
[21] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[22] *Clark*, 9 F.3d at 326.
[23] *Id.*
[24] *Liberty Lobby, Inc.*, 477 U.S. at 252.
[25] *Id.*

6

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[26] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[27]

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[28] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[29]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[30] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) citing to

---

[26] *Id.*
[27] *Id.* (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[28] *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[29] *Id.*
[30] *Liberty Lobby, Inc.*, 477 U.S. at 250.

particular parts of materials in the record that go beyond mere allegations; (ii) showing that the materials cited do not establish the absence or presence of a genuine dispute; or (iii) showing that an adverse party cannot produce admissible evidence to support the fact."[31]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[32] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[33] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[34]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[35] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[36] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[37]

---

[31] Fed. R. Civ. P. 56(c)(1).
[32] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[33] Fed. R. Civ. P. 56(e)(2).
[34] *Id*. at (c)(3).
[35] *Liberty Lobby, Inc.*, 477 U.S. at 249.
[36] *Id*.
[37] *Id*. at 249-50 (internal citations omitted).

## III. ANALYSIS

Eisenhuth brings three federal claims against Cabinetworks: (1) violation of the ADA under a failure-to-accommodate theory; (2) violation of the FMLA under an interference theory; and (3) violation of the FMLA under a retaliation theory.[38]

### A. FMLA Claim

Eisenhuth brings his FMLA claim based on two separate theories: (1) retaliation; and (2) interference.[39]

#### 1. Retaliation Theory

A plaintiff bringing a *prima facie* FMLA retaliation claim must establish the following: (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and (3) the adverse action was causally related to his invocation of rights.[40] FMLA retaliation claims require proof of the employer's retaliatory intent.[41] Courts have assessed these claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*,[42] as follows:

> [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the

---

[38] Doc. 1 ¶¶ 54-76. Eisenhuth also brings a state law claim (count IV), but the Court declines to exercise supplemental jurisdiction over this issue and therefore dismisses this claim.
[39] *Id.* ¶¶ 54-69.
[40] *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (internal citations and quotations omitted).
[41] *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (internal citations and quotations omitted).
[42] 411 U.S. 792 (1973).

evidence, that the articulated reason was a mere pretext for discrimination.[43]

Eisenhuth's Opposition to Cabinetworks' Motion fails to meaningfully address this claim aside from mere conclusions. Indeed, Eisenhuth admits that he "has the initial burden of establishing a *prima facie* case,"[44] but then he makes no attempt to do so. He then skips to *McDonnell Douglas* and argues that "the facts and evidence at issue suggest that [Cabinetworks'] purported reasons for terminating [him] could be disbelieved as pretextual."[45] However, sets forth no citations to support such facts.

Under the summary judgment standard, the Court is under no obligation to mine the record in search of facts and evidence that parties allude to but fail to cite. Eisenhuth has not helped himself here.

Cabinetworks persuasively argues that Eisenhuth fails to satisfy the third prong of a *prima facie* FMLA retaliation claim, which requires evidence that Eisenhuth's termination was causally related to his invocation of rights under the FMLA.[46] Specifically, Cabinetworks contends that Eisenhuth "cannot show retaliatory intent, and is unable to prove that his employment termination was caused by his application for FMLA leave."[47] Instead, the company continues, Eisenhuth's

---

[43] *Capps*, 847 F.3d at 151-52 (internal citations and quotations omitted).
[44] Doc. 44 at p. 12.
[45] *Id*.
[46] Doc. 37 at p. 11.
[47] *Id*.

termination "was based solely on [his] accumulation of attendance points for unexcused absences over several months."[48] The Court agrees with Cabinetworks, but mostly because Eisenhuth has failed to meaningfully argue to the contrary.

Assuming that Eisenhuth has satisfied the first two prongs of a *prima facie* claim, (*i.e.*, that (1) he availed himself of FMLA protection, and (2) his termination was an adverse employment action) the Court finds that Eisenhuth has failed to cite any evidence demonstrating a causal link between his termination and his request for FMLA assistance. Indeed, Eisenhuth himself admits that Lincoln National assisted him throughout the FMLA application process.[49] And while he takes issue with the quality of that assistance and disputes Lincoln National's detailed records (without providing any reliable rebuttal evidence of his own aside from his own recollections), those quibbles are red herrings for this claim's purposes.

At most, the evidence reveals that Cabinetworks' third-party administrator made an effort to facilitate and encourage Eisenhuth to fill out the required FMLA paperwork.[50] Eisenhuth's citations to his own recollected timeline and his mother's deposition confirm that he and his mother did engage with Lincoln National on multiple occasions.[51] While Eisenhuth may take issue with the substance of those

---

[48] *Id.*
[49] Doc. 45 ¶¶ 15-16.
[50] Doc. 39, Ex. D (Lincoln National's business records).
[51] *E.g.*, Doc. 45 ¶¶ 24 ("It is admitted that Lincoln National had conversations with Mr. Eisenhuth and his mother Barbara Eisenhuth about additional information that Lincoln National purportedly required[.]"), 25 (same).

conversations and with Lincoln National's subsequent decision, those objections do not materialize into the requisite causation demonstrating that Cabinetworks terminated Eisenhuth *because of* his efforts to receive FMLA assistance. And a review of the parties' papers and respective statements of facts reveals no additional evidence establishing a "causal link" upon which a reasonable factfinder could rely.

Therefore, the Court finds that Eisenhuth has failed to demonstrate a *prima facie* claim of discrimination as required for an FMLA retaliation claim. Accordingly, the Court need not engage in *McDonnell Douglas* burden shifting, and this claim fails as a matter of law. Summary judgment is granted in favor of Cabinetworks.

### 2. Interference Theory

"Unlike an FMLA retaliation claim, an interference claim is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."[52] Such a claim "does not require an employee to prove discriminatory intent on the part of the employer; rather, [it] requires only proof that the employer denied the employee his or her entitlements under the Act."[53] Here, *McDonnell Douglas* burden-shifting is not required.[54]

The Court is confused by Eisenhuth's argument regarding this claim. On the final page of his Opposition, he devotes less than a page to the claim, concluding

---

[52] *Capps*, 847 F.3d at 155 (internal citations and quotations omitted).
[53] *Id*.
[54] *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006).

that "[t]here is no dispute that [Eisenhuth was eligible for FMLA protections or that he was entitled to protections," continuing that "[Lincoln National] had approved the leave and agreed that [Eisenhuth] was entitled to the leave protection and eligible, but was no longer employed as of early April 2020, and therefore his FMLA leave application was again denied."[55]

The Court looked for support in Eisenhuth's own recollected timeline (which he appended to his statement of facts) and found none.[56] The timeline did not corroborate Eisenhuth's Opposition assertions. The timeline instead stated that Lincoln National repeatedly denied his FMLA leave requests, first on the basis that Eisenhuth's physician's forms were incomplete, and then on the basis that his employment had already been terminated.[57]

Cabinetworks argues that "[Eisenhuth] cannot show that he was entitled to FMLA leave, because he did not support his request with the appropriate certification from his endocrinologist, who failed/refused to complete the paperwork after multiple requests," continuing: "[n]ot only did [Eisenhuth] not provide the completed certification [within the 15-day deadline], but [he] did not provide it after multiple extensions of that deadline."[58]

---

[55] Doc. 44 at p. 15.
[56] Doc. 45, Ex. B (Eisenhuth's timeline).
[57] Id. (entries for "AT SOME POINT" and 04/20/20).
[58] Doc. 37 at pp. 15-16.

The Court reviewed and referred to Lincoln National's business records, which Cabinetworks appended to its statement of facts, for support. These records supported Cabinetworks' argument that Eisenhuth failed to complete the appropriate paperwork for his FMLA leave request:

- 02/27/2020: (E-Mail from Lincoln National to Cabinetworks) "The attached acknowledgement package was sent to Brian and contains a medical form required for leave approval. The First section must be completed by Brian and the remainder of the form will be completed by the treating provider. It has not been received so I do not know if he has given the form to the physician or not."

- 03/05/2020: (E-Mail from Lincoln National to Eisenhuth) "Good morning, we received the attached medical certification for your leave request and need more information in order to process the form. If this information is not provided, leave may be denied."[59]

- 03/20/2020: (Notes from telephone call between Lincoln National and Eisenhuth's mother) "ADV LV is denied," "[Acknowledgement] Letter states that if [form] not returned in 15 days then leave would deny and denial was sent on 2/26/20," and noted that it is the employee's "responsibility to make sure we get [the form]."[60]

While Lincoln National's business records were, for the most part, written using shorthand and abbreviations—and Cabinetworks did not do much to clarify or translate these entries for the Court—it is clear from the records that Lincoln National kept regular communication with Eisenhuth and his mother, returned their phone calls, and made an effort to answer each of their questions. While this correspondence may have been challenging for Eisenhuth, there is no cited evidence

---

[59] Doc. 39, Ex. D (Lincoln National's business records)
[60] *Id.*

from the record indicating that Cabinetworks interfered with Eisenhuth's efforts to avail himself of FMLA benefits. If Eisenhuth has evidence to the contrary,[61] he has not presented it to the Court.

Therefore, the Court finds that a reasonable factfinder could not find that Cabinetworks interfered with Eisenhuth's rights under the FMLA, and this claim fails as a matter of law. Summary judgment is granted in favor of Cabinetworks.

### B. ADA Claim

This Court has held that plaintiffs who allege violations under the ADA "may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation."[62] An employer violates the ADA when it fails to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.[63]

To plead a *prima facie* claim of failure to accommodate, a plaintiff must allege that: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; and (3) his employer did not make a good faith effort

---

[61] *E.g.*, dated correspondence and copies of timely submitted and complete paperwork.
[62] *Frazier v. Pa. State Univ.*, No. 4:21-CV-00350, 2022 U.S. Dist. LEXIS 89811, at *14 (M.D. Pa. May 18, 2022) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002)).
[63] 42 U.S.C. § 12112(b)(5)(A)).

15

to assist; and (4) he could have been reasonably accommodated.⁶⁴ A "reasonable accommodation" has been defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."⁶⁵

Eisenhuth argues that Cabinetworks was "on notice that [Eisenhuth's] attendance was being affected by his disability, triggering [Cabinetworks'] obligation to engage [Eisenhuth] in a meaningful back and forth discussion towards the development of a reasonable accommodation under the [ADA]."⁶⁶ Cabinetworks responds that "there has been no testimony, documentation, or other evidence of record that [Eisenhuth] ever requested any specific accommodation for his diabetes."⁶⁷ Cabinetworks further points out that Eisenhuth testified in his deposition: "[Cabinetworks] was very good about it. Like . . . if I had a low blood sugar or something, they would let me go off – you know – into the cafeteria . . . to get something to eat[.]"⁶⁸ The Court finds Cabinetworks' argument persuasive.

While Eisenhuth's papers fail to actually demonstrate that he satisfies the first prong of a *prima facie* ADA claim, the Court will assume, *arguendo*, that his lifelong diabetes diagnosis qualifies him for ADA protection. But the inquiry does not end

---

⁶⁴ *Capps*, 847 F.3d at 157 (internal citations and quotations omitted).
⁶⁵ 29 C.F.R. § 1630.2(o)(1)(ii).
⁶⁶ Doc. 44 at pp. 5-6.
⁶⁷ Doc. 37 at p. 17.
⁶⁸ *Id.*, Doc. 39, Ex. B (Eisenhuth Dep. Tr. 61:9-13).

there. The second prong of a failure-to-accommodate claim requires that the protected individual request an accommodation from the employer.[69]

Without evidence, a reasonable factfinder could not find that Eisenhuth affirmatively requested an accommodation. In fact, Eisenhuth's own papers fail to state that he requested an accommodation – instead, he argues that Cabinetworks' having been "on notice" about Eisenhuth's diabetes "triggered" the company's obligation to engage in a meaningful back-and-forth about a reasonable accommodation.[70] This argument is unsound; the only thing that can trigger an employer's obligation to begin the back-and-forth accommodation process is an affirmative request from the disabled employee; Eisenhuth has failed to cite any evidence that he made such a request.

Therefore, the Court concludes that a reasonable factfinder could not find that Eisenhuth satisfied the second prong of a failure-to-accommodate claim under the ADA, and Eisenhuth's ADA claim fails as a matter of law. Summary judgment is granted in favor of Cabinetworks.

---

[69] *Capps,* 847 F.3d at 157 (internal citations and quotations omitted).
[70] Doc. 44 at pp. 5-6.

## IV. CONCLUSION

The Court grants Cabinetworks' Motion for Summary Judgment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
